**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE ESTATE OF ANTOINETTE SCARDINA, by and through EXECUTOR RICHARD SCARDINA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) | **No. 21-CV-3811** **Judge Edmond E. Chang** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ADVOCATE AURORA HEALTH, INC. And ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE CHRIST MEDICAL CENTER, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 N Upper Wacker Drive
Chicago, IL 60606
Tel: (312) 845-1200
jeffrey.bushofsky@ropesgray.com

Edward McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4779
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Counsel for Defendants Advocate Aurora Health, Inc., et al.*

October 15, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ........................................................................................................................... 3

I.     PLAINTIFF LACKS CONSTITUTIONAL ARTICLE III STANDING (RULE 12(B)(1)). .................................................................................................................. 3

    A.     Plaintiff Fails To Allege a Concrete, Present, or "Certainly Impending" Injury. .............................................................................................................. 4

    B.     Plaintiff Fails to Allege Facts Plausibly Supporting Proximate Causation. .......... 6

II.     THE COMPLAINT FAILS TO STATE A CLAIM (RULE 12(b)(6)). ............................. 7

    A.     Plaintiff Fails to State a Claim for Negligence. ......................................................... 8

        1.     Plaintiff's negligence claims are barred by the Economic Loss Doctrine. ....................................................................................................... 8

        2.     No Illinois statute creates a duty to safeguard personal information. .............................................................................................. 10

        3.     Plaintiff's negligence claim is not supported by damages. .................... 11

    B.     Plaintiff Fails To State a Claim for Breach of Implied Contract. ......................... 11

    C.     Plaintiff Fails To State a Claim for Unjust Enrichment. ....................................... 12

    D.     Plaintiff fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. ......................................................................... 14

    E.     Plaintiff fails to state a claim under the Illinois Deceptive Trade Practices Act. ........................................................................................................................... 15

    F.     The Illinois Personal Information Protection Act Does Not Apply. .................... 15

Conclusion ............................................................................................................................ 15

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Amling v. Harrow Indus. LLC*,
   943 F.3d 373 (7th Cir. 2019) ................................................... 4

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
   572 F.3d 440 (7th Cir. 2009) ............................................... 3, 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................... 8, 15

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019) ........................................... 11

*Babbitt Muns., Inc. v. Health Care Serv. Corp.*,
   64 N.E.3d 1178 (Ill. App. Ct. 2016) ..................................... 11

*In re Barnes & Noble Pin Pad Litig.*,
   Case No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ........................... 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................... 4, 7, 15

*Bell v. Access Credit Union*,
   No. 2-20-0021, 2020 WL 7588070 (Ill. App. Dec. 18, 2020) ................................... 12

*Bell v. City of Chi.*,
   835 F.3d 736 (7th Cir. 2016) ................................................. 8

*Brody v. Finch Univ. of Health Scis.*,
   698 N.E.2d 257 (1998) ....................................................... 12

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ................................................. 2

*California v. Texas*,
   141 S. Ct. 2104 (2021) ......................................................... 6

*Carpenter v. Phillips*,
   419 Fed. Appx. 658 (7th Cir. 2011) ..................................... 10

*Chabraja v. Avis Rent A Car Sys., Inc.*,
   192 Ill. App.3d 1074, 140 Ill. Dec. 221, 549 N.E.2d 872 (1989) ........................... 15

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................................6

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) .........................................................................................13

*Cleveland v. United States*,
  No. 00 C 424, 2000 WL 1889640 (N.D. Ill. Dec. 28, 2000) ..........................................9

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
  887 F.3d 803 (7th Cir. 2018) ..............................................................................8, 10, 11

*Cooney v. Chicago Public Schools*
  407 Ill. App. 3d 358, 347 Ill. Dec. 733, 943 N.E.2d 23, 29 (2010) ...........10, 11, 14

*Dinerstein V. Google, LLC*
  484 F. Supp. 3d 561, 573 (N.D. Ill. 2020), appeal docketed, No. 20-3134 (7th
  Cir. Nov. 2, 2020) .........................................................................................................13

*Enslin v. Coca-Cola Co.*,
  739 F. App'x 91 (3d Cir. 2018) .....................................................................................12

*Foiles v. N. Greene Unit Dist. No. 3*,
  261 Ill. App.3d 186, 198 Ill. Dec. 562, 633 N.E.2d 24 (1994) ....................................11

*Fox v. Iowa Health System*
  399 F. Supp. 3d 780, 788 (W.D. Wis. 2019) ..................................................................9

*Goldberg v. Ruskin*,
  471 N.E.2d 530 (Ill. Ct. App. 1984) ...............................................................................9

*Gunn v. Minton*,
  568 U.S. 251 (2013) .......................................................................................................4

*Hammond v. Bank of N.Y. Mellon Corp.*,
  No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................................5

*Irwin v. Jimmy John's Franchise*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ..........................................................................13

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*,
  No. 16-cv-7619, 2019 WL 918426 (N.D. Ill. Feb. 25, 2019) ........................................11

*Lewert v. P.F. Chang's China Bistro*,
  819 F.3d 963 (7th Cir. 2016) ........................................................................................13

*Martis v. Pekin Mem'l Hosp. Inc.*,
  395 Ill. App. 3d 943 (2009) ...........................................................................................14

*In re Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011) .............................................................5, 8, 9

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    91 Ill.2d 69, 61 Ill. Dec. 746, 435 N.E.2d 443 (1982) .............................................8

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) .........................................................10, 13

*Popp v. Cash Station, Inc.*,
    244 Ill. App.3d 87, 184 Ill. Dec. 558, 613 N.E.2d 1150 (1992) ...........................15

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011).........................................................................6

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ......................................................................5

*Ruiz v. Gap, Inc.*,
    380 F. App'x 689 (9th Cir. 2010) ...............................................................11

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ..............................................................6

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ....................................................................10

*Tkacz v. Weiner*,
    368 Ill. App. 3d 610, 858 N.E.2d 514 (2006) ...................................................14

*Toney v. Kinsch*,
    No. 10 C 06375, 2012 WL 567729 (N.D. Ill. Feb. 21, 2012).................................14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..........................................................................3, 6

*In re VTech Data Breach Litig.*,
    Case Nos. 15cv10889, 15cv10891, 15cv11620, 15cv11885,
    2017 WL 2880102 (N.D. Ill. July 5, 2017)...............................................5, 6, 9

*W. Bend Mut. Ins. Co. v. Schumacher*,
    844 F.3d 670 (7th Cir. 2016) ....................................................................15

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ......................................................................8

*Yeftich v. Navistar*,
    722 F.3d 911 (7th Cir. 2013) ......................................................................8

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act,
    815 Ill. Comp. Stat. §§ 505, et seq..........................................................................14

Illinois Deceptive Trade Practices Act
    Ill. Comp. Stat. §§ 510/2, et seq............................................................................15

Illinois Personal Information Protection Act,
    815 ILCS 530/10(a), et seq.....................................................................................15

Illinois Uniform Deceptive Trade Practices Act........................................................15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ..........................................................1, 2, 3, 4

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 2, 7

Defendant Advocate Aurora Health, Inc. ("Aurora") submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

The Complaint asks the Court to blame Defendants for a "series of suspicious behavior[s]" involving the financial accounts of Plaintiff Antoinette Scardina and her family (Compl. ¶ 12), but it lacks any plausible theory linking Defendants to any cognizable Plaintiff harm. Plaintiff tries unsuccessfully to manufacture a connection using two gossamer threads: Plaintiff was a patient at Defendants' hospital in late 2020 (Compl. ¶ 10), and her son, Richard, allegedly received a data breach notice from Defendants addressed to his mother in early 2021—correspondence he purportedly discarded but remembers (Compl. ¶ 11). Based only on this elusive letter, the Complaint alleges that "hackers accessed [Plaintiff's] information from Defendants' systems," (Compl. ¶ 12).

The timing of key events alleged in the Complaint makes Plaintiff's claims wholly implausible and thus subject to dismissal. The Complaint asserts that Defendants fell victim to four data breaches (the "Incidents"), which were reported in April 2020, August 2020, September 2020, and July 2021 (Compl. ¶¶ 1, 25). But Ms. Scardina was a patient between December 6, 2020 and January 2021—*after all three alleged 2020 data breaches happened*—and the alleged letter was sent during February or March of 2021—well *before the alleged July 2021 data breach. Compare* Compl. ¶¶ 10, 11 *with* ¶¶ 25. Accepting all of these allegations as true, there is no way that Plaintiff's injuries could be linked to any of the Incidents, and it is even more implausible for a breach of Plaintiff's confidential information to have somehow spread to her children's accounts.

Looking past Plaintiff's fatal timing problem, the Complaint alleges no cognizable injury plausibly caused by the Defendant. Even if the Complaint's allegations of fraudulent charges were true, the alleged charges were all reversed or reimbursed. Nowhere does the Complaint allege that

Ms. Scardina or her children suffered *any* unreimbursed losses or any other recognized injury actually connected to the "suspicious" activity on the Scardina family's various accounts.

In addition, a total lack of proof upends Plaintiff's claims where, as here, standing is challenged under Rule 12(b)(1), and the Court may therefore look beyond the Complaint. Defendants have no record of ever sending any data breach notice letter to Plaintiff or any other person in the Scardina family, and Plaintiff admittedly has no proof that any such correspondence exists. Even if Plaintiff could establish standing, the absence of plausible allegations of injury and causation would compel dismissal under Rule 12(b)(6) of all of Plaintiff's asserted claims—negligence, breach of implied contract, unjust enrichment, and violation of Illinois statutes. The Economic Loss Doctrine bars Plaintiff's tort claims, and her other creative claims find no support in the law. Because its defects are both dispositive and irremediable, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

As the Complaint alleges, Defendants fell victim to four incidents in 2020 and 2021. Defendants reported each Incident in detailed communications to regulators and data subjects, a summary of which is available on the U.S. Department of Health and Human Services ("HHS") database. Compl. ¶¶ 1, 25.[1] None of these incidents involved the Plaintiff.[2]

Nonetheless, according to the Complaint, Mr. Scardina received a letter "describing the data breach of his mother's information" in early 2021 but disposed of the letter without noting any details. Compl. ¶¶ 3, 11. The Complaint alleges "hackers accessed [Ms. Scardina's] information" at some point after her passing in January 2021 but before Mr. Scardina received the letter in February

---

[1] Paragraph 25 of the Complaint incorporates by reference the public record of Incident reports to HHS. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). This record can be found online at Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information, U.S. DEP'T OF HEALTH & HUMAN SERVS. (last accessed October 12, 2021), https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf and attached as Exhibit 1.
[2] *See* Declaration of Peg Schmidt, attached as Exhibit 2.

or March. *Id.* ¶ 12. No Incident is alleged during the period when Plaintiff alleges hackers stole Ms. Scardina's information. Furthermore, Defendants have no record of any such letter sent to Plaintiff and no indication that Plaintiff's data was impacted by any cyber event they have experienced.[3]

According to the Complaint, a "series of suspicious behaviors occurred" in the Scardina family's accounts after the alleged "hack." Compl. ¶ 12. In particular, the Complaint alleges four "suspicious" events: Ms. Scardina's "bank account was hacked" resulting in $1000 in fraudulent charges, which the bank reversed (Compl. ¶ 14); Mr. Scardina's bank replaced his bank card, although no fraudulent charges on the account were alleged (Compl. ¶ 13); Ms. Scardina's daughter's Kohl's account experienced false charges, which were mitigated (Compl. ¶ 15); and Mr. Scardina received false charges from Amazon, suspicious texts, emails, and medical advertising (Compl. ¶¶ 16-17). Plaintiff was not held financially liable for any of the alleged false charges. Compl. ¶¶ 13-17. The only charges Plaintiff alleges to have incurred were two expenses completely unrelated to the alleged breach: late fees for discrete accounts that had been paid automatically by the closed account (Compl. ¶ 14) and a $4 monthly T-Mobile scam detection service (Compl. ¶ 18).

## ARGUMENT

## I. PLAINTIFF LACKS CONSTITUTIONAL ARTICLE III STANDING (RULE 12(B)(1)).

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Standing requirements are a crucial limitation to ensure the proper role of the court by requiring plaintiffs to establish that they have "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

---

[3] *Id.*

Without standing, the court has no jurisdiction to hear the case. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." (internal quotations omitted)). When Defendants bring a factual Rule 12(b)(1) challenge to standing, courts "may properly look beyond the jurisdictional allegations and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," and the party seeking jurisdiction has the burden of offering "competent proof" that it has standing. *Apex Digital*, 572 F.3d at 444. (internal quotation marks omitted); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019).

Plaintiff has no "competent proof" of injury. Although she was a patient at Defendants' hospital, Plaintiff's data was not involved in any data incident affecting Defendants. Without such involvement of her personal information in a data breach, Plaintiff has no standing to bring a case against Defendants and instead asks this Court to award her damages based on four unrelated data breaches. The Complaint alleges only a few relevant facts: (1) Defendants suffered data breaches in 2020 and 2021 (Compl. ¶ 1); (2) Plaintiff was a patient of Defendants' facility in late 2020 (Compl. ¶ 10); (3) Plaintiff allegedly received a letter that was discarded (Compl. ¶ 11); and (4) suspicious activity was noted on the family's accounts (Compl. ¶¶ 12-16). From that handful of allegations, Plaintiff draws the implausible conclusion that, at some point between Plaintiff going to the hospital and Defendant allegedly sending the letter, "hackers accessed Antoinette's information from Defendants' systems." Compl. ¶ 12. An implausible presumption is not sufficient to confer standing. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions.").

### A. Plaintiff Fails To Allege a Concrete, Present, or "Certainly Impending" Injury.

Plaintiff's allegations of fraudulent charges do not constitute actual, concrete injury in fact where Plaintiff does not plausibly allege ultimate financial responsibility for such charges. *See, e.g.,*

*In re Barnes & Noble Pin Pad Litig.*, Case No. 12-cv-8617, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) ("In order to have suffered an actual injury, [plaintiff] must have had an unreimbursed charge on her credit card."); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (discrediting an unauthorized credit card charge for which a plaintiff is not held financially responsible as an Article III "injury"). To the contrary, Plaintiff's Complaint states that the bank "resolv[ed] the fraudulent charge." Compl. ¶ 14. Where a Plaintiff has been "reimbursed for all unauthorized withdrawals and bank fees," they have "suffered no actual injury." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011).

Plaintiff also alleges an increased risk of future harm, but these allegations are too remote and speculative to confer standing. While the Seventh Circuit has recognized standing based on the "substantial *risk* of harm" from plaintiffs' lost time and money spent mitigating future identity theft, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693-96 (7th Cir. 2015), no such substantive risk exists here. The Incidents all occurred *before* Ms. Scardina entered the hospital or *after* Mr. Scardina received the alleged notice, meaning Plaintiff's information could not have been affected, so there is *neither* a current injury *nor* future risk. While data breaches may sometimes lead to "increased risk of identity theft," this is not true where plaintiffs "fail to make the connection between the data breach they allege and the identity theft they fear . . . and do not explain how the stolen data would be used to perpetrate identity theft." *In re VTech Data Breach Litig.*, Case Nos. 15cv10889, 15cv10891, 15cv11620, 15cv11885, 2017 WL 2880102 at *3 (N.D. Ill. July 5, 2017).

Plaintiff also alleges a loss of time spent "resolving issues relating to the exposure" of information (Compl. ¶ 18), including efforts to prevent "future consequences of the Security Breach, including . . . purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, [and] initiating and monitoring credit

freezes." Compl. ¶ 4. The Supreme Court has held that potential future injuries must "'must be *certainly impending* to constitute injury in fact' and that 'allegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted); *see also TransUnion*, 141 S. Ct. at 2210 (noting the Court in *Clapper* said "*material risk* of future harm" is necessary for standing—and even then it only supports injunctive relief).

A hacker's potential ability to use stolen data to commit fraud does not create a "certainly impending" future injury. Rather, plaintiffs are injured **only** "*if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011). Plaintiff does not "explain how the data breach subjected [plaintiff] to a substantial risk of identity theft and corresponding mitigation costs . . . . Specifically plaintiff[] do[es] not explain how the stolen data would be used to perpetrate identity theft" and thus "[i]t is unclear how the disclosure" of information "would increase the risk of fraudulent transactions." *VTech*, 2017 WL 2880102 at *4.

### B. Plaintiff Fails to Allege Facts Plausibly Supporting Proximate Causation.

Even if the injuries allegedly suffered by Plaintiff were sufficient to establish standing, which they are not, they cannot reasonably be traced to Defendants' actions. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) ("A plaintiff has standing only if [they] can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Plaintiff has the burden of establishing an injury that is fairly traceable to Defendants, yet Plaintiff cannot even identify as a threshold matter which data was stolen and during which Incident. *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876 (N.D. Ill. 2014) ("[A] harm that . . . is contingent on a chain of attenuated hypothetical events and actions," cannot "plausibly establish an 'imminent' or 'certainly impending' risk.").

The Complaint alleges no injury from Defendants' actions. Plaintiff's personal information

could have been compromised in a myriad of ways that have nothing to do with Defendants and are equally as plausible—particularly in light of the temporal disconnect between Plaintiff's presence at the Defendant hospital and her alleged harm. For example, Plaintiff could have entered the information on an unsecured website, another establishment could have taken the personal information, or Plaintiff may have inadvertently discarded documents without first rendering the personal information on them unreadable. There is no allegation that Defendants collected Ms. Scardina's bank account details—indeed, there is no allegation that Plaintiff paid for hospital services at all, and a compromise of only Plaintiff's health information would not have enabled banking services fraud.

Data breaches are a common event, and only becoming more common in 2020 and 2021, as the Complaint recognizes. Compl. ¶ 50. In fact, two of the institutions that the Complaint cites as having accounts with suspicious activity—Kohl's and T-Mobile—have recently suffered well-publicized incidents involving the theft of personal information, and it is very possible that the family's information was released through one of those incidents.[4] Given the lack of allegations tying compensable harm to Defendant's alleged data breaches, Plaintiff's allegations fall short of the minimum requirements for standing, and the Complaint should be dismissed.

## II. THE COMPLAINT FAILS TO STATE A CLAIM (RULE 12(b)(6)).

Even if the Complaint alleges an adequate injury for standing—which it does not—the facts alleged are insufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A viable complaint must allege facts sufficient to "allow the court to draw the reasonable

---

[4] In 2020, Kohl's settled with the FTC over claims of repeated issues with fraudulent account charges. *See* Press Release, Fed. Trade Comm'n, FTC Reaches Settlement with Kohl's (June 10, 2020), https://www.ftc.gov/news-events/press-releases/2020/06/ftc-reaches-settlement-kohls-over-allegations-it-failed-provide. In August 2021, T-Mobile revealed that it suffered a major data breach. *See* T-Mobile, Notice of Data Breach: Keeping you safe from cybersecurity threats (last updated September 7, 2021), https://www.t-mobile.com/brand/data-breach-2021.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). This Complaint's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and, therefore, it cannot cross the line from possibility to plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 679. As such, "the inference of liability is merely speculative." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013).

### A. Plaintiff Fails to State a Claim for Negligence.

#### 1. *Plaintiff's negligence claims are barred by the Economic Loss Doctrine.*

As a matter of Illinois law, Plaintiff alleges only economic damages and, therefore, cannot recover in tort. Illinois, like most U.S. jurisdictions, subscribes to the Economic Loss Doctrine. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 813 (7th Cir. 2018). Also known as the *Moorman* Doctrine, from *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill. Dec. 746, 435 N.E.2d 443 (1982), the rule "bars a plaintiff from recovering for purely economic losses under a tort theory of negligence" which is reserved for "personal injury or damages to one's property." *In re Michaels*, 830 F. Supp. 2d at 528; *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Illinois applies the rule to sales of services as well as goods because both contexts provide "the ability to comprehensively define a relationship" by contract. *Schnuck*, 887 F.3d 803, 813 (internal quotations omitted).

Federal courts considering data breach complaints, including the Seventh Circuit, have held that the Economic Loss Doctrine bars tort claims where the plaintiff cannot allege personal injury or property damage. *Schnuck*, 887 F.3d at 813 (explaining that "physical or personal injuries" from "defective products" trigger a greater societal interest in cost spreading that should not be triggered by economic loss stemming simply from a product "failing to perform as expected"); *Michaels*, 830

F. Supp. 2d at 531 (citing *In re TJX Cos. Retail Sec. Breach Litig.,* 564 F.3d 489, 498-99 (1st Cir. 2009); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175-77 (3d Cir. 2008)).

In *Fox v. Iowa Health System*, a federal district court applied the Economic Loss Doctrine to plaintiffs' Illinois tort claims based on allegations hackers stole patients' health information from defendant's network. 399 F. Supp. 3d 780, 788 (W.D. Wis. 2019). The *Fox* plaintiffs argued that they had damages that were not economic losses: drained phone batteries from spam calls, lost time, lost value of their private information, "violation of their privacy rights," and "increased risk of identity theft and fraud in the future." *Id* at 795. The court said those alleged damages "reflect a pecuniary loss rather than a personal injury or damage to property." *Id.* Further, the court dismissed plaintiffs' "claims for inconvenience or lost time" because plaintiffs "had an opportunity to include a remedy for data breaches as part of their contract but chose not to." *Id.*

Plaintiff alleges a remarkably similar litany of economic losses to those in *Fox*: risk of future fraud (Compl. ¶ 45), costs of credit-freezing or phone scam detection, (Compl. ¶ 46), "loss of value" of private information (Compl. ¶ 47), "benefit of the bargain"[5] (Compl. ¶ 48), and time spent monitoring financial and medical accounts (Compl. ¶ 49). *See* 399 F. Supp. 3d at 795; *VTech*, 2017 WL 2880102 at *5 ("To the extent plaintiffs allege a nonzero amount of time or money spent to protect themselves from future harm, those efforts do not qualify as actual injuries").[6]

---

[5] This theory of damages alleges that "members of the Class overpaid for a service that was intended to be accompanied by adequate data security but was not." The Complaint specifies this would apply only to "Class members who paid Defendants for their services." Compl. ¶ 48. The Complaint does not allege that Plaintiff paid Defendants for services.

[6] Plaintiff's allegations of emotional distress are particularly impossible: the Plaintiff is the *estate* of a woman who died before Defendants' notice of the incident reached her son (who is not a plaintiff in his personal capacity). An estate cannot suffer emotional distress. Even so, purely speculative emotional distress, with no allegation of intentional infliction, is not recognized in Illinois. *See, e.g.*, *Goldberg v. Ruskin*, 471 N.E.2d 530, 539–40 (Ill. Ct. App. 1984); *Cleveland v. United States*, No. 00 C 424, 2000 WL 1889640, *5 (N.D. Ill. Dec. 28, 2000) (dismissing claims brought by executrix of deceased plaintiff's estate for emotional distress).

### 2. *No Illinois statute creates a duty to safeguard personal information.*

Plaintiff's negligence claim fails for another basic reason: no Illinois statute provides a private right of action for failure to safeguard consumer data.[7] In *Cooney v. Chicago Public Schools*, the court concluded Chicago Public Schools did not owe a legal duty to safeguard employees' personal data. 407 Ill. App. 3d 358, 347 Ill. Dec. 733, 943 N.E.2d 23, 29 (2010). In that case, the Chicago Board of Education inadvertently disclosed the personal information, including social security numbers and health insurance plan information, of almost 2,000 former employees. *Id.* 27. The employees urged the court to "recognize a 'new common law duty' to safeguard information" in light of the sensitive data that was disclosed. *Id.* at 28–29. But Illinois's intermediate court declined to recognize a new duty in the absence of specific authority. *Id.* 29. Because the Illinois Supreme Court has not held otherwise, federal courts interpreting Illinois law have followed *Cooney* and declined to impose a common law duty to safeguard personal information.[8]

Plaintiff alleges Defendants "owed a duty . . . to secure and safeguard" personal information (Compl. ¶ 76) and a "duty of care not to subject" patients' information "to an unreasonable risk of exposure and theft" (Compl. ¶ 77). Neither of these are duties are recognized by Illinois law. *See e.g.*, *Perdue*, 455 F. Supp. 3d at 762 (dismissing the negligence per se claim for a data breach where the plaintiff could not "show that a statute or ordinance has been violated"). Illinois legislation related to data breaches is limited to notice requirements and establishes no independent duty to

---

[7] Neither the FTC Act nor HIPAA include a private right of action. *In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019); *Carpenter v. Phillips*, 419 Fed. Appx. 658, 659 (7th Cir. 2011) ("HIPAA does not furnish a private right of action"). The district court in *Schnuck* also rejected the idea that § 45(a) creates a duty enforceable through an Illinois negligence action. *See Schnuck*, 210 F. Supp. 1022, 1041 (S.D. Ill. 2016).

[8] *See Schnuck*, 887 F.3d at 816 (noting its practice to "consider decisions of intermediate appellate courts unless there is good reason to doubt the state's highest court would agree with them"); *In re SuperValu, Inc.*, 925 F.3d at 963; *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020). In *SuperValu*, consumers argued the store owed them "an extra-contractual duty" because it "solicited" their information "and thus had a duty to take reasonable measures to safeguard their data and notify them of any data breach." *In re SuperValu*, 925 F.3d at 963. The district court declined to recognize such a duty, and so did the Eighth Circuit. *Id.*

safeguard. *Schnuck*, 887 F.3d at 818–19 (citing *Cooney*, 407 Ill. App. 3d at 361–62).

### 3. *Plaintiff's negligence claim is not supported by damages.*

Even if Defendants had a duty to protect Plaintiff's data from criminals under Illinois law, which it did not, Plaintiff has not suffered any actual damages that were caused by the Defendants' actions. Possible increased risk of future identity theft and credit-monitoring costs such as those alleged here cannot establish the damages element of negligence claims. *See, e.g., Ruiz v. Gap, Inc.*, 380 F. App'x 689 (9th Cir. 2010) (increased risk of future theft is not sufficient for a negligence claim); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 9-10 (D.D.C. 2019) (an action for negligence requires more than speculative harm).

### B. Plaintiff Fails To State a Claim for Breach of Implied Contract.

To claim a breach of implied contract, plaintiffs must plead the: "(i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) a resultant injury to the plaintiff." *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178 (Ill. App. Ct. 2016) (quoting *Batson v. Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 35, 377 Ill. Dec. 489, 2 N.E.3d 405). The Complaint fails to do so.

For a valid contract claim to exist, the circumstances must show a mutual understanding and intent to contract or a "meeting of the minds." *Foiles v. N. Greene Unit Dist. No. 3*, 261 Ill. App.3d 186, 190, 198 Ill. Dec. 562, 633 N.E.2d 24 (1994). Plaintiff makes no such allegation. Even if Ms. Scardina expected Defendants to guarantee data protection, her subjective understanding and unilateral intent cannot establish an enforceable contract term; instead, there must be mutual understanding and intent, even for implied contracts. *See Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2019 WL 918426 (N.D. Ill. Feb. 25, 2019).

In addition to failing to establish a meeting of the minds, the Complaint fails to allege facts that support the other elements of a valid contract—offer, acceptance, and consideration. *Brody v.*

-11-

*Finch Univ. of Health Scis.*, 698 N.E.2d 257, 265 (1998). The Complaint alleges few facts relevant to the agreement: (1) Ms. Scardina was a patient at Defendants' facility (Compl. ¶ 10); (2) Defendants store patient data to provide care (Compl. ¶ 22); and (3) Defendants publish a Notice of Privacy Practices which states that they comply with federal privacy law (Compl ¶ 33).[9] These facts do not add up to an agreement to guarantee data protection as Plaintiff claims. To the extent there was an implied contract between the parties, it was for medical services, and its terms did not include absolute protection of the Plaintiff's data for all time. The Complaint cites Defendants' Privacy Notice (Compl. ¶ 33), which says Defendants "are required by law to maintain the privacy and security of your protected health information." The Notice does not say personal data is protected from all threats; indeed, the Notice acknowledges the possibility of a breach in the next line: "We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information." With this acknowledgment, Defendants disclosed that breaches may happen.

Moreover, even if there were an implied contract, Plaintiff fails to show actual damages resulting from it. *See Bell v. Access Credit Union*, No. 2-20-0021, 2020 WL 7588070 *3 (Ill. App. Dec. 18, 2020) (affirming dismissal where Plaintiff "merely assert[ed] that she suffered an injury, without alleging any supporting facts."). Federal courts have held that plaintiffs alleging breach of implied contract regarding personal data handling must show loss to state a claim. *See, e.g., Enslin v. Coca-Cola Co.*, 739 F. App'x 91, 95 (3d Cir. 2018) (contract claim required actual damages that were causally connected to the breach). As described in Section I, the Complaint pleads no facts supporting recognizable harms, much less any harms plausibly traceable to Defendants' actions.

### C. Plaintiff Fails To State a Claim for Unjust Enrichment.

The Complaint also fails to state a claim for unjust enrichment. Under Illinois law, unjust

---

[9] Plaintiff incorporates by reference the Notice of Privacy Practices, which has been included as Exhibit 3.

enrichment claims "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). The Complaint is unsuccessful on both elements. Plaintiff does not identify any benefit Defendants received from their alleged act or any compensable damages, and there is no plausible allegation Defendants used Plaintiff's data to enrich themselves.

In *Perdue v. Hy-Vee, Inc.*, the court likewise found that plaintiffs failed to state a claim for unjust enrichment when consumers' credit card information was exposed due to a data breach. 455 F. Supp. 3d at 749. The court stated that "Plaintiffs have not alleged that any specific portion of their payments went toward data protection. Additionally, Plaintiffs have not alleged a benefit conferred in exchange for protection of their personal information." *Id.* at 766. As in *Hy-Vee*, no allegations suggest that part of the payment for medical services was intended for data protection.

Plaintiff offers a theory of overpayment, or "benefit of the bargain," whereby Plaintiff allegedly overpaid for services that she intended to be "accompanied by adequate data security." Complaint at ¶¶ 48, 113. But, as the court observed in dismissing a similar unjust enrichment claim, "[Plaintiff] did not pay for a side order of data security and protection; it was merely incident to her food purchase." *See Irwin v. Jimmy John's Franchise*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016); *see also Lewer*t *v. P.F. Chang's China Bistro*, 819 F.3d 963, 968 (7th Cir. 2016) (noting plaintiffs did not allege they would not have dined at P.F. Chang's had they known of their security practices). Likewise, in *Dinerstein v. Google, LLC*, the court rejected the plaintiff's theory that he "overpaid" for services or, alternatively, that he was owed a "reasonable royalty for the use of his PHI." 484 F. Supp. 3d 561, 573 (N.D. Ill. 2020), appeal docketed, No. 20-3134 (7th Cir. Nov. 2, 2020).

### D. Plaintiff fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

To state a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Plaintiff must allege facts supporting five elements: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Toney v. Kinsch*, No. 10 C 06375, 2012 WL 567729, at *5 (N.D. Ill. Feb. 21, 2012) (internal quotation omitted); *see also Martis v. Pekin Mem'l Hosp. Inc.*, 395 Ill. App. 3d 943, 949 (2009). A Complaint that fails to allege facts supporting just *one* of the five elements fails to state a claim, this Plaintiff cannot allege *any* of the five elements required under the law.

First, the activities described in the Complaint are not covered by the ICFA, because the third element of the test is not satisfied. The alleged actions occurred at a hospital and not "in the course of conduct involving trade or commerce." Illinois courts have interpreted "trade or commerce" to exclude medical services because "they are not ordinary commercial enterprises." *Tkacz v. Weiner*, 368 Ill. App. 3d 610, 613, 858 N.E.2d 514, 517 (2006).

As to the fourth element—injury—the standing and negligence discussions above have already demonstrated that Plaintiff failed to allege injury. *See Cooney*, 407 Ill. App. 3d at 365–66. With respect to the first and last elements—deceptiveness and causation—Plaintiff alleges no act, statement, or nondisclosure by Defendants that is misleading or causally linked to harms cited in the Complaint. With the exception of a general reference to the online Privacy Notice, the Complaint fails to identify any misleading statement or course of conduct by the Defendants. In addition, Plaintiff argues Defendants omitted material information from their online statement. Compl. ¶¶ 126, 136. But Plaintiff fails to allege facts demonstrating the materiality of the allegedly omitted

information. *Id.* The Complaint must allege that Defendants were *aware* their security system lacked proper safeguards and failed to so inform the public, intending for consumers to rely on that deception. Such a claim cannot survive the plausibility test of *Iqbal* and *Twombly*. Plaintiff pleads no facts that even hint Defendants knew this. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

**E. Plaintiff fails to state a claim under the Illinois Deceptive Trade Practices Act.**

The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") is similar to the ICFA, but IUDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Chabraja v. Avis Rent A Car Sys., Inc.*, 192 Ill. App.3d 1074, 140 Ill. Dec. 221, 549 N.E.2d 872, 876 (1989). A consumer may seek injunctive relief under the act only if the plaintiff is likely to be damaged by misleading statements from the defendant in the future. *Popp v. Cash Station, Inc.*, 244 Ill. App.3d 87, 184 Ill. Dec. 558, 613 N.E.2d 1150 (1992). As the Plaintiff is deceased, there is no likelihood of future damage to support this claim.

**F. The Illinois Personal Information Protection Act Does Not Apply.**

Finally, Plaintiff alleges that Defendants violated the Illinois Personal Information Protection Act ("IPIPA") by not notifying individuals "in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10(a) (West 2014); (Compl. ¶ 118.) IPIPA does not provide a direct private right of action, but an IPIPA violation may constitute an unlawful practice under the ICFA. It cannot, however, save an otherwise defective ICFA claim like Plaintiff's. The Complaint does not allege any act that occurred in the course of commerce and it lacks any cognizable harm proximately caused by Defendants' actions.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

-15-

Respectfully submitted,

*/s/ Edward McNicholas*

Edward McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4779
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 N Upper Wacker Drive
Chicago, IL 60606
Tel: (312) 845-1200
jeffrey.bushofsky@ropesgray.com

*Counsel for Defendants Advocate Aurora Health, Inc., et al.*

October 15, 2021